[Civ. No. 710.   Third Appellate District.—August 11, 1910.]

## C. C. TREADWAY, Administrator of Estate of WILLIAM ZAWADILL, Deceased, Respondent, v. BOARD OF DIRECTORS OF VETERANS' HOME OF CALIFORNIA, and C. DE COLMESNIL, Treasurer, Appellants.

VETERANS' HOME—CONSTITUTIONAL LAW—SPECIAL ACT.—The act of March 11, 1897, accepting from the Veterans' Home Association of Napa County a conveyance of its title to its tract, improvements and furnishings, and making the same a state home for aged and indigent ex-soldiers, sailors and marines of the United States army and navy, is a valid special law in a case where a general law could not be made applicable.

ID.—POWER OF LEGISLATURE OVER CONDITIONS OF MEMBERSHIP—DELEGATION TO GOVERNING BOARD.—The legislature, having power to make the "Veterans' Home" a state institution, had the power to regulate the conditions of membership therein, either directly or by delegating power over such conditions to the governing body of the state institution.

ID.—CONSTRUCTION OF STATUTE AND AMENDMENTS WITH REGULATIONS OF BOARD REGULATING MEMBERSHIP.—The act of March 11, 1897, and the acts amendatory thereof of March 20, 1905, and of March 16, 1907, are to be taken in connection with the regulations of the board, in determining the conditions on which applicants may enter and remain as members of the State Veterans' Home.

ID.—DISPOSITION OF PENSION MONEY OF MEMBERS DYING INTESTATE AFTER AMENDMENTS—ADMINISTRATION NOT PERMISSIBLE.—Where an applicant for admission to the State Veterans' Home on March 20, 1903, was lawfully required to deposit all pension moneys with

the state treasurer, and to agree to be governed not only by the laws of the state and the rules of the board then existing, but also by all amendments to such laws and rules, and he died subsequent to the amendment of March 16, 1907, and to an amended rule in pursuance thereof, requiring all pension moneys of a deceased member not disposed of by will to be distributed, without probate, to a widow, minor children, or dependent mother or father, in the order named, within five years, and if no such relative appears within that time the same shall escheat to the state, there can be no administration of pension moneys of a member dying intestate.

ID.—REASONABLENESS OF AMENDED STATUTE AND RULE.—The provision of the amended statute and rule is not harsh or ungenerous, as applied to an indigent applicant for membership, supposed to have no one under legal obligation to support him, and to the terms of which he agreed when admitted. The pension money being exempt from execution, no rights of creditors are to be considered in its distribution; and the law wisely provides that it shall not be subject to the fees and commissions of the public administrator and his attorney.

ID.—DISPOSITION OF TRUST FUND—AVOIDANCE OF ADMINISTRATION.— The pension moneys agreed to be deposited were a trust fund, to the disposition of which the owner had consented in writing, reserving only the retained right to withdraw it in his lifetime, but with lawful directions for its disposition, in case of his dying intestate, as specifically directed. This he had the right and power to do; and such disposition of the fund negatived a testamentary intent, and constituted a gift in trust during life to avoid administration after death.

APPEAL from a judgment of the Superior Court of Napa County. H. C. Gesford, Judge.

The facts are stated in the opinion of the court.

Frank L. Coombs, for Appellants.

L. E. Johnston, H. L. Johnston, and Chas. E. Trower, for Respondent.

CHIPMAN, P. J.—Plaintiff brings the action as administrator of the estate of William Zawadill, deceased, to recover from defendants the sum of $500, alleged to have been on deposit with the treasurer of the Veterans' Home of California to the credit of, and subject to the order and disposition of,

said deceased at the time of his death, to wit, on the seventh day of January, 1908. The answer admitted the due appointment of plaintiff as administrator of the estate of said deceased, but denied that deceased, at his death, had any money in the hands of said defendant, treasurer as aforesaid, subject to the orders or disposition of the deceased, except that said defendant had in his possession and control the sum of $517.05, "which said sum consisted of a balance, at the time of the death of said William Zawadill, held by the treasurer of said home for the purposes and for the reasons hereinafter set forth." It is further averred that defendant, the Veterans' Home of California, is a state institution, created by and existing under the act of the legislature of the state of California, approved March 11, 1897, entitled "An act to accept from the Veterans' Home Association the conveyance of, and to vest the title in the state of California, to the tract of land in Napa county known as the Veterans' Home, with the improvements and furnishings thereon, to make the same a state home for United States soldiers, sailors and marines, and to provide for the government thereof by the state." In substance it is further averred that the said Zawadill, on November 29, 1903, made his application in writing to be admitted to said home, as a member thereof, subject to, and in conformity with, the laws of the state, relating to such matters, at that time in force, and under the by-laws, rules and regulations of the said home, and as a condition thereof, and in consideration of the benefits to arise therefrom, he did then and there agree with the board of directors of said home, and with the said home, to be governed by and to abide by the laws of the state, the by-laws, rules and regulations of said home, then existing or that might thereafter, by changes or by amendment or otherwise be in force relating thereto; that, in the month of December, 1903, the said board of directors considered said application, and finding the said applicant qualified to become a member of said home, duly and regularly admitted him to said home as a member thereof, and he then became, and ever since, to the time of his death, was such member, and "subject in all matters, and especially in the matter of the disposition of the moneys claimed by plaintiff herein, to the laws of the state of California, the by-laws, rules and regulations of said

Veterans' Home of California, at said time and subject to such new laws, by-laws, rules and regulations in force at the time of his death.'' It is then averred that, while such member, the said Zawadill, in various amounts and at divers times, deposited with the treasurer of said home, to be kept and retained by said treasurer and disposed of, in the case of the death of said Zawadill, in accordance with the laws of the state, and the by-laws and rules and regulations relating to said home, the aggregate sum of $517.05, in pension moneys, as mentioned in his said application; that he died intestate on January 7, 1908, leaving said sum in the hands of said treasurer as a balance to be held and disposed of according to the laws of the state and the by-laws and regulations of said home as they existed at the time of the death of said Zawadill, and the said treasurer now holds said money in accordance therewith and in accordance with said application of said deceased for membership, ''and as a trust fund to be paid in accordance with section 10 of the said act of the legislature of the state of California creating said Veterans' Home, as amended, which amendment was approved March 16, 1907, and in accordance with the by-laws, rules and regulations of said home, passed and adopted in accordance with said amendment,'' which said amended by-laws, rules and regulations were adopted and in force prior to the death of said deceased. The answer makes the said application and certain of the said by-laws, rules and regulations part of the answer as exhibits ''A,'' ''B,'' and ''C.''

Regulations of the home in force when deceased became a member, as shown by exhibit ''A,'' declare that every worthy officer, soldier, sailor or marine, who is a *bona fide* resident of this state and who honorably served in the army or navy of the United States during the war with Mexico, the Civil War (or any prior war), and who is in indigent circumstances, and by reason of age, infirmity, or wounds received in service, is incapable of self-support, shall be entitled to admission into the home, subject to the laws of the state of California and to the regulations prescribed by the board of directors for its control and management. It is further provided that a candidate for admission must make a formal application signed by himself, and such application must be favorably acted upon by said board before he can be admitted,

and the application must be accompanied by evidence satis-
factory to the board of the facts stated by the applicant, to
wit: As to his residence in this state, his service in the army
or navy of the United States during the late rebellion, the
Mexican war, or other wars prior thereto, or the Spanish and
Philippine wars. "If a U. S. pensioner, he must file with
his application his pension certificate, and a consent or
agreement to transfer to the home the amounts received by
him as pensioner, while a member of the home, under the
following rules and regulations, now in force, or such other
rules and regulations as may be established by the board of
directors, to wit: Members of the home who are pensioners
shall, upon receipt of pension, or by the twenty-fourth day
of each pension month, pay over to the commandant, or to
such officer as he may designate, all of his pension money.
In case of death of a pensioner any balance of pension money
remaining in the hands of the treasurer of the home at the
date of the pensioner's death shall be paid to his widow, minor
children or dependent mother or father in the order named,
and should no widow, minor child or dependent parent be
discovered within one year from the time of the death of the
pensioner, said balance shall be paid to the Post Fund; to
be used for the common benefit of the members of the home
under the direction of the board of directors subject to future
reclamation by the relatives hereinbefore designated, upon
application filed with the board of directors within five years
after the pensioner's death. Failure or refusal of any mem-
ber to make payment at the time specified, and as provided,
shall be considered a violation of the rules, and the com-
mandant is hereby directed to give such offending member
an honorable discharge from the home. Any member so dis-
charged shall not be readmitted within six months from the
date of his discharge." Before admission the applicant
must sign the following: "I further stipulate and agree, as
a condition consequent upon my admission to the said home,
that I will, if a United States pensioner, or whenever I be-
come such, on and after each recurring pension pay-day, or
at such times as may be fixed by the board of directors of
said home, sign and execute the necessary vouchers and other
papers for the collection of the pension money due me, and
indorse the check issued in payment thereof; and I hereby

authorize· and empower the commandant of said home to transmit said check, or the proceeds thereof, to the treasurer of the home, to hold and dispose of the same as provided by its by-laws, and the rules, regulations and orders which have been or may hereafter be established by its board of directors." Exhibit "B" is a copy· of the "Agreement with the Board of Directors of the Veterans' Home of California," entered into by said deceased, as follows:

"I, William Zawadill, having made application for admission to the Veterans' Home of California, location Napa county, do hereby agree to fully comply with the by-laws of said home, if permitted to become a member thereof, and to obey and abide by all the orders, rules and regulations made by its board of directors or officers, and to promptly and cheerfully perform all the duties required of me as a member of said home. I further agree, as a condition· consequent upon my admission to the said home, that I will, if a United States pensioner, or whenever I become such" [then follows the concluding stipulation provided for by exhibit "A"].

"Witness my hand this 29 day of November, 1903.

                              "WILLIAM ZAWADILL.

"Signed in presence of
                    "W. F. WALLACE."

A communication signed by the secretary of the home and directed to the then commandant read as follows: "In consideration of the above agreement and stipulation the application of William Zawadill for admission to the Veterans' Home has been duly approved, and therefore, on presentation of this, you will admit him to membership therein."

Exhibit "C" sets forth certain pertinent regulations of the home, being a part of amended and revised regulations adopted in 1907 after the amendment of the act of 1897, and prior to the death of deceased, namely: Nos. 148, 149, 150, 161 and 170. Sections or paragraphs numbered 148 and 149 relate to the qualifications and condition on which the applicant may enter the home, and are substantially the same as set forth in exhibit "A." Regulation 150 relates to the residence of the applicant, his service in the army or navy, his indigent circumstances and need of aid or the benefits of the home in consequence of physical disability, name, age, etc., much the same as set forth in exhibit "A," and further:

"That he has no relatives able to maintain him, who are liable for his support under the laws of California." Regulation numbered 161 reads: "In case of the death of a pensioner or member of the home, any pension or other money due him and remaining in the hands of the treasurer shall be paid directly and without probate to his widow, minor children, or mother or father, in the order named, if demand is made within one year; otherwise the same shall escheat to the home, subject to future reclamation by the above relatives for a period of five years."

The foregoing are alleged to be all the rules and regulations of the home pertinent to any issue in the case. A general demurrer to the amended answer was sustained, and plaintiff had judgment as prayed for in the complaint, upon the default of defendants to make further answer.

By the act of 1897 (Stats. 1897, p. 106), the state took over all the property of the Veterans' Home Association, a private corporation, "for the purposes of a home for aged and indigent ex-soldiers, sailors and marines of the United States army and navy." Sec. 1. "Said property shall continue to be used as a home for aged and indigent ex-soldiers, sailors and marines." Sec. 2. The act provides for a governing board of directors who "shall have power to manage said home and administer its affairs, make by-laws for the government of the board, . . . adopt rules and regulations for the government of said home, which rules and regulations shall conform, as near as possible, to the rules and regulations by which the United States Soldiers' Home and branches thereof, are governed." Section 5 provides for the organization of the board, duties of officers, etc. Other sections relate to matters of administration not here material. Section 10 requires that all money received by the directors or any officer (except such as is paid by the state for disbursement), including pension moneys belonging to the pensioners of the home, and all other trust moneys, shall be immediately paid over to the treasurer of the board, who shall forward to the state treasurer all moneys, except pension moneys and other trust funds, the canteen fund and the emergency fund.

Section 12 provides that "No person shall be admitted to reside in said home (families of officers and employees ex-

14 Cal. App.—6

cepted) who is not an honorably discharged United States soldier, sailor or marine''; requires one year's residence in the state. ''The board may make such additional rules governing the admission of applicants as in its judgment may be deemed just and proper and for the best interests of the home.''

Section 16 provides that the board might receive applicants from states or territories upon condition that they pay ''for their maintenance and support the same rate per capita that the maintenance and support of said home shall cost the state of California per capita.'' (This section was repealed by the act of 1905.)

This act was amended in some respects by act of March 20, 1905 (Stats. 1905, p. 471). Section 1 of the act amends section 2 of the act of 1897, and provides as follows: ''Said property shall continue to be used as a home for aged and indigent United States ex-soldiers, sailors and marines. The home shall be a state home, under the exclusive management and control of the state, by a board of directors, to be appointed by the governor,'' and fixes the term of their office.

Section 2 amends section 3 and prescribes the oath to be taken by the officers of the home. Section 3 amends section 5 and provides for the organization of the board and its employees and their compensation. Section 4 amends section 7 and relates to making reports to the governor. Section 5 amends section 10 and reads substantially as section 10 of the act of 1907 (Stats. 1907, p. 330), to be noticed later. Section 7 amends section 12 and relates to admission to the home; requires of ex-soldiers, sailors and marines a residence in the state of six months. ''The board may make such additional rules governing the admission of applicants and may prescribe conditions precedent upon which they may enter, and the conditions on which they may remain, as in its judgment may be deemed just and proper for the best interests of the home.'' Section 8 amends section 13 and relates to traveling expenses; and section 9 repeals sections 14 and 16.

The act of 1907 (Stats. 1907, p. 330) consists of one section, as follows: ''Section 1. Section ten of an act approved March 11, 1897, entitled 'an act to accept from the Veterans' Home Association the conveyance of, and to vest the title in

the state of California, to the tract of land in Napa county known as the Veterans' Home, with the improvements and furnishings thereon, to make the same a state home for United States soldiers, sailors, and marines, and to provide for the government thereof by the state,' as amended by an act approved March 20, 1905, is hereby amended to read as follows:

"Sec. 10. All moneys received by the directors, or any officer of the home (except such as may be paid to them by the state for disbursement), including pension moneys belonging to the pensioners in the home, and all other trust moneys, shall be immediately paid over to the treasurer of the home."

Then follows a provision requiring the treasurer of the home, on or before the tenth day of each month, to forward to the state treasurer all moneys then in his possession, "except pension and other trust funds" and some other special funds. "Said moneys shall be immediately deposited by the state treasurer to the fund hereinafter designated 'Fund for the support and maintenance of the Veterans' Home of California.' Any balance of pension money held by the board, or by its authority upon the death of a pensioner, or any moneys belonging to members of the home, shall, upon their death, be held as a trust fund, to be paid by the board, directly, without probate, or by its order, to the widow, minor children or mother or father of the pensioner or member in the order named; and should no widow, minor child, or parent be discovered within one year from the time of the death of the pensioner, or of the member, said balance, or moneys, shall be paid to the post fund of the home, to be used for the common benefit of the members of the home under the direction of the board, subject to future reclamation by the relatives hereinbefore designated in the order named, upon application filed by the one entitled to the same within five years after the death of said pensioner, or member." The act then provides for the disposition of any personal effects of the deceased by public sale after one year, the proceeds to go to the post fund to be used for the common benefit of the members, "as hereinabove provided for pension and other moneys, and subject to future reclamation within the period of five years from the date of the

death of the member as hereinbefore mentioned. The board of directors shall make rules and regulations to carry this into effect. *Provided, however,* that nothing in this act shall in any way conflict with the right of any member of the home to dispose of his property, including such pension moneys, by last will."

It seemed necessary to set forth somewhat fully the averments of the answer, including the application of deceased, the rules and regulations of the home, together with the statutory provisions relating thereto, for the several acts of the legislature, and the rules and regulations made in pursuance thereof, and the application for membership of the deceased are to be read together in determining the questions presented.

Respondent's position is, as was doubtless the view taken by the trial court, that the act of 1907 is unconstitutional, and any regulations of the home pursuant thereto are necessarily void. The feature of the law and regulations thus assailed is the provision which makes disposition of the pension money of a member of the home who dies intestate.

It is conceded that the legislature had the power to create this home and that there is no other similar state institution. (*Board of Directors* v. *Nye,* 8 Cal. App. 527, [97 Pac. 208], where the subject is exhaustively treated.) It can hardly be said that the act creating the home is a general law, for it applies to no other similar institution. It is essentially a special law enacted for a special purpose, and, it seems to us, does not present the case "where a general law can be made applicable." (*Board of Directors* v. *Nye, supra.*) We may, therefore, dismiss respondent's first objection. Special laws are not inhibited by the constitution, except as provided by article IV, section 25, and its several subdivisions, of which latter, subdivisions 12 and 30 only are claimed to apply. In no other respects are the laws or regulations relating to the home called in question. Conceding, then, the power to create the home as a state institution, why may not the legislature, either directly by the provisions of the act, or indirectly by delegating the power to the governing body of the home, prescribe the conditions and terms upon which the persons provided for by the law may become members of the home? The law does not purport to affect "the estates of deceased persons" or "change

the law of descent or succession," and was intended for no such purpose; it merely extends to the class of persons indicated the benefits and privileges of the home on certain conditions. In the particular complained of applicants agree that their pension money shall be paid to the treasurer of the home from time to time as received, to be held for their personal benefit and use while members, but in case of their death while members, and without having made other disposition of it, any balance unexpended shall go to the home for the benefit of all the members, subject to the right of certain named persons to this balance if called for within a stated period—five years. It cannot be said that this regulation is harsh or burdensome or ungenerous, for the applicant is supposed to be in indigent circumstances when admitted, having no one under any legal obligation to support him, and it is only when the member dies intestate that the law operates to dispose of any balance to his credit, and to this he agreed when admitted as a member. No question can arise as to the rights of creditors, for the United States statute protects the pension from execution, and the statute of this state makes the following exemption: "All money received by any person, a resident of this state, as a pensioner of the United States government, whether the same shall be in the actual possession of such pensioner, or deposited, loaned, or invested by him." (Code Civ. Proc., sec. 690, subd. 20.) The only object, therefore, which the public administrator can have in getting possession of this pension money is to subject it to the payment of his fees and commissions and the fee of his attorney. The law wisely provides that this may not be done.

But if we are mistaken in this view of the law, there is still another ground, relied on by defendant, which, we think, justified the defendant in refusing to turn over this money to plaintiff.

It will be observed that section 10 of the act of 1907 and the act of 1905 is but giving legislative approval in terms of the rules and regulations of the home in force when the deceased became a member, and to which he gave his express consent. Looking back to the provisions set forth in exhibits "A" and "B," it will be seen that the agreement under which the deceased became a member of the home has

been fully executed; the pension money is held by the treasurer of the home under this agreement, and it came into his possession and is held subject to conditions precedent to the admission of deceased as a member of the home. Respondent concedes that the directors of the home and treasurer became trustees of Zawadill during his lifetime, but it is contended "that upon his death they held such property as trustees for the legal representatives, creditors and heirs of the said Zawadill."

It seems to us that the principles announced in *Hellman* v. *McWilliams*, 70 Cal. 449, [11 Pac. 659], and *Booth* v. *Oakland Bank of Savings*, 122 Cal. 19, [54 Pac. 370], fit this case, and should control it.

In the Booth case Mrs. Frances A. Bell, a widow, at her death had certain money on deposit in defendant bank. In her lifetime she executed and delivered to the bank an order, in the matter of this deposit, reading: "Pay to the individual order of either Cornelia E. Booth or Aurelia L. James, or myself. Signed, Frances A. Bell." Verbally she stated to the teller of the bank "that she wanted to fix the account so that in the event of her death her sisters, who were in the east, could draw the money without the estate being probated." The account was changed to meet Mrs. Bell's directions. She continued to draw from the fund in her lifetime, leaving a balance at her death, to recover which was the purpose of the action. The executors of Mrs. Bell's will were made defendants, "because of a claim by them of a right to receive and control said money as part of the estate." It was held that a trust was thus sufficiently created as to the trustor and the beneficiaries under section 2221 of the Civil Code, and as to the trustee was sufficiently created under section 2222 of the same code. It was also held that the mutual consent of the trustor and trustee created a trust of which the beneficiaries may take advantage, in so far as it has not been rescinded or revoked; also, that the power of the trustor to withdraw the deposit does not affect the validity of the trust as to the remainder thereof; and it is immaterial whether such power be considered a power of revocation under section 2280 of the Civil Code, or a trust in favor of so much of the fund as she might withdraw and in favor of her sisters, as to the remainder. The code does

not require that the beneficiary shall be informed of the trust, and it is well settled that no set form of words is necessary to create a trust of personal property. It was said in the opinion: "I do not think it necessary to determine whether the control over the fund reserved by Mrs. Bell is to be regarded as a power of revocation, or whether the whole transaction is to be regarded as a trust in her favor of so much of the fund as she might see proper to withdraw in her lifetime, and of the remainder for her sisters. In either case the practical result is the same; for a power of revocation of the whole may be exercised as to a part, and, when so exercised, does not affect the remainder."

It would be difficult to express more clearly the intention of the trustor than is such intention expressed in the present case. Faithful to his agreement and to the regulations to which he had given his written consent, he confided his pension to the keeping of the treasurer of the home, reserving the right to withdraw it in his lifetime, but with directions that should he die intestate, any balance in the hands of the treasurer should be disposed of as specifically directed. This he had the right and the power to do. The supreme court said, in *Nichols* v. *Emery*, 109 Cal. 323, 331, [50 Am. St. Rep. 43, 41 Pac. 1089] : "A man may desire to make disposition of his property in his lifetime to avoid administration of his estate after death. Indeed, in view of the fact, both patent and painful, that the fiercest and most expensive litigation, suggesting the bitterest feeling, springs up over wills, such a desire is natural. And when it is given legal expression, as by gifts absolute during life, or by gifts in trust during life, or voluntary settlements, there is manifest, not only an absence of testamentary intent, but an absolute hostility to such intent."

The judgment is reversed, with directions to overrule the demurrer to the answer.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 10, 1910.