[Civ. No. 1091.   Third Appellate District.—June 5, 1913.]

WALTER S. BROWNLEE, as Administrator of the Estate of John Murphy, Deceased, Respondent, v. THE BOARD OF DIRECTORS OF THE VETERANS' HOME OF CALIFORNIA et al., Appellants.

VETERANS' HOME—PENSION MONEY OF DECEASED MEMBER—DISPOSITION THEREOF.—Under the law relative to the California Veterans' Home (Stats. 1897, p. 106), pension money in the possession of a member of the Home at the time of his death intestate is not recoverable from the directors of the Home by his administrator; it is to be held by them upon the trusts declared by the statute, subject to future reclamation by the relatives of the deceased.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Frank L. Coombs, for Appellants.

Nathan F. Coombs, for Respondent.

BURNETT, J.—While a member of said Veterans' Home, at Yountville, in Napa County, the said John Murphy died intestate, on the thirtieth day of April, 1911. At the time of his death he owned and had on his person the sum of $912.12. Possession of this was taken by defendants and they refused upon demand to deliver the same or any part thereof to plaintiff. The action was therefore instituted by him, as administrator, to recover the money, upon the theory that it became and was a part of the assets of the estate of said decedent. Defendants, answering the complaint, admitted that they took and held and still hold possession of the money, but they attempted to justify by the following allegations: "The said Veterans' Home of California is a state institution, created by and existing under that certain act of the legislature of the state of California, for the purpose and with the powers therein set forth, approved March 11, 1897, [Stats. 1897, p. 106]. . . . That under and by virtue of, and in conformity with the provisions of the said act of the legislature, and under the by-laws, rules and regulations of said Veterans' Home of California, duly passed, adopted and then in force, and in order to receive and enjoy the benefits assured and to be secured thereby, the said John Murphy, on the 14th day of August, 1896, made his application in writing to be admitted to the said Veterans' Home as a member thereof." Then follow allegations concerning and copies of his application for membership and of the rules and regulations of the Home, as far as pertinent to the issue, and of his agreement "to transfer to the Home all moneys received as a pensioner while a member of the Home subject to the rules and regulations governing the same," and the answer proceeds: "That it was further agreed therein that the said moneys, upon the death of said member, should be held and disposed of in con-

formity to the provisions of the laws of the United States regulating the disposition of such moneys,'' a copy of said law being set out, and ''That thereupon, and in the month of August, 1896, the said Board of Directors considered said application, and finding the said John Murphy qualified under the laws then in force, and under the by-laws, rules and regulations of the said Veterans' Home then in force, admitted him to said Home as a member thereof, and said John Murphy, from the time of said admission to said Home, continuously to the time of his death, as aforesaid, was a member of said Veterans' Home, and subject in all matters, and especially in the matter of the disposition of his moneys at the time of his death, and of the moneys claimed by plaintiff herein, to the laws of the state of California, as the same might exist and be in force at the time of his death, and to the by-laws, rules and regulations of said Home, as the same might exist and be in force at the time of his death. That while the said John Murphy was a member of said Veterans' Home, to wit: In the year 1907, [Stats. 1907, p. 330], the legislature of the state of California passed an amendment to section 10 of said act of the legislature creating the said Veterans' Home of California a state institution, which amendment remained and was in force and effect and a part of said law at the time of his said death, and that said moneys were at said time, and now are, subject to the control and disposition of said Veterans' Home as therein provided. . . . That the said sum of $912.12 is the balance of the aggregate of the pension moneys received by the said John Murphy from the government of the United States while he was a member of said Home, and found upon his person at the time of his death, and is now kept and retained by defendants, to be reclaimed by the widow, minor chilren, or dependent father or mother, within one year from the time of his death; otherwise to inure to the common benefit of the members of the Home, subject to future reclamation by said relatives within five years from said death.''

The lower court sustained a general demurrer to the answer and judgment was entered for plaintiff. Hence, the appeal by defendants.

The main controversy is directed to the construction of said amendment to section 10 of said act and particularly to this

clause: "Any balance of pension money held by the board, or by its authority, upon the death of the pensioner, or any moneys belonging to the members of the Home, shall, upon their death, be held as a trust fund, to be paid by the board, directly and without probate, or by its order, to the widow, minor children or mother or father of the pensioner or member in the order named; and should no widow, minor child, or parent be discovered within one year from the time of the death of the pensioner or of the member, said balance or moneys shall be paid to the post fund of the Home to be used for the common benefit of the members of the Home under the direction of the board, subject to future reclamation by the relatives hereinbefore designated in the order named, upon application filed by the one entitled to the same within five years after the death of said pensioner or member."

The first point of difference grows out of the expression: "or any moneys belonging to the member of the Home." Appellants contend that this necessarily means all the moneys wherever found belonging to the member at the time of his death. The position of respondent, however, is that, construing the words "with the whole section, we find that the pension, or any moneys 'to be held as a trust' are the moneys 'received by the directors, or by any officer of the Home.' "

It may be remarked that appellants have given to this language an unnecessarily broad application. As before stated, the allegation of their answer is that this sum of $912.12 was pension money received by the said Murphy while he was a member of said Home, and the exigency of appellants' case requires only that "any moneys" shall cover such pension money. This is, we think, the more reasonable view of the intention of the legislature. Pension moneys and trust funds were the particular subjects in the legislative mind and their disposition was contemplated and provided for by said section 10.

It is impossible, though, without doing violence to the ordinary significance of the terms employed, to limit the phrase in question to the pension moneys that had been received by the directors prior to the death of Murphy. This view would render the language entirely redundant. The prior expression, "any balance of pension money held by the board," was clearly intended to include all such pension money held in

trust at the death of the pensioner.   Indeed, it is difficult to understand how the intention could have been expressed more certainly.

But the legislature went a step further and declared that "any moneys" should be held as a trust fund.   Limiting this to pension moneys, it is entirely clear that two conditions were contemplated: one, where pension moneys had been reduced to possession by the directors, and another, where they were not so held at the time of the death of the pensioner.

We find nothing in the context demanding a different construction of the clause.   The first part of the section declares what the directors shall do with all trust moneys coming into their possession,—namely, pay them over immediately to the treasurer of the Home.   Then follows the provision requiring said treasurer, on or before the tenth day of each month, to forward to the state treasurer "all moneys then in his possession," except certain enumerated funds, among which is the "post fund."   The next clause covers the duty of the state treasurer as to the moneys so forwarded to him.   Then we have the sentence whose construction is involved herein, directing, as already seen, that said money, if none of the designated relatives be discovered within a year, be paid to the *post fund* of the Home.   It is then provided that all personal effects of the deceased member shall be held for one year for said relatives and if not claimed in said period shall be sold and the proceeds paid in to the post fund for the common benefit of the members, subject to future reclamation within the period of five years.

The section then concludes as follows: "The board of directors shall make proper rules and regulations to carry this into effect.   Provided, however, that nothing in this act shall in any way conflict with the right of any member of the Home to dispose of his property, including such pension moneys, by last will."

We are unable to discover therein any expression modifying in any manner the meaning of the phrase before us nor can we find in the application of the familiar canons of interpretation any support for the position taken by respondent. We cannot avoid the conclusion that "any moneys" includes at least the pension money in the possession of the member at the time of his death and not disposed of by will.

But more reliance seems to be placed by respondent upon the contention that by the said language the state attempted to create a trust, which failed because it was not formally accepted by said board. In this connection the assertion is made that to complete the trust it was necessary for the board of trustees ''to make proper rules and regulations to carry this into effect'' and since, admittedly, no such rules or regulations were passed, the legislative scheme came to naught.

However, if it be considered in the aspect of a trust, it seems plain that the act of the legislature has supplied all the terms and conditions, and the only thing required of the board is to devote the money to the purpose therein specified. This they are proceeding to do, as alleged in their answer. It is not easy to perceive what additional rule or regulation is needed to effectuate the legislative intention.

The controlling features of the situation, as we view it, then, are these: The law authorizes a member of the Home to dispose of his pension money by will. If he does not choose to do so, in consideration of the privileges and benefits that he enjoys as a member, his pension money shall not be subject to administration but shall be devoted to certain purposes that are therein specified, and the board of directors is designated as the agency by which the money is to be disposed of as required. The member, John Murphy, died intestate in possession of and owning pension money and said board has accepted the trust and insists upon its right to obey the command of the law.

Nothing seems to be lacking to make the trust complete.

Of course, the plan might have been set forth in more amplified form but it is apparently intelligible and certain enough for the common understanding. It is true that there is no specific direction in the statute that the board shall take possession of said moneys but this is necessarily implied in the provision that they shall ''be held as a trust fund, to be paid by the board,'' etc.

It may be stated that the validity of said act is not assailed on any ground. It is not claimed that it is unconstitutional or in excess of legislative authority. Indeed, it is admitted by respondent that ''section 10 clearly attempted a trust and there is no question but followed out, a trust is fully authorized.''

Another view taken by respondent suggests the necessity for the consent of the member in order to make the trust effective. This position is manifestly somewhat inconsistent with the one already considered. But, regarded in this light, the conclusion is not unreasonable that consent is implied from the fact that the member made no disposition by will of the money. The law, which he is presumed to know, presented to him the alternative of devising this money or leaving it to be impressed with said trust. By his failure to act he impliedly chose the latter and his administrator is not in a position to maintain the contrary.

Moreover, it is not unfair to say that when he became a member of the Home he expressly agreed that his pension moneys should be subject to this trust. In his application for admission to membership he declared he was a United States pensioner and "I hereby agree to transfer to the Home all amounts received by me as such pensioner while a member of the Home, subject to the rules and regulations governing the same. . . . I further stipulate and agree that, in the event of my death, while a member of the Home, any balance of pension money that may be to my credit in the hands of the treasurer of the Home, shall be disbursed to my heirs and disposed of in conformity to the provisions of the laws of the United States regulating the disposition of pension moneys due deceased members of the national homes for disabled volunteer soldiers."

It may be said that "the laws of the United States" therein referred to provided for the payment of said balance to the "widow, minor children or dependent mother or father in the order named" and in case none be found within one year that said balance be paid "to the post fund of the branch of said national Home of which the pensioner was a member at the time of his death, to be used for the common benefit of the members of the Home under the direction of the board of managers," subject to future reclamation.

It seems clear from the foregoing that at the time Murphy was admitted as a member of the Home it was the intention and agreement on the part of himself and the said Home that his pension money should be paid into the treasury thereof and any balance remaining at his death should be charged with the same trust.

It also is deducible from the pleadings that if the said intention and agreement had been carried out the money now in controversy, instead of being in the possession of Murphy at the time of his death, would have been held by the treasurer of said Home for the purpose specified in said statute and would constitute a part or the whole of the balance covered by his said agreement.

In that event the case would have been entirely similar to *Treadway* v. *Board of Directors*, 14 Cal. App. 75, [111 Pac. 111], wherein it was held that "The pension moneys agreed to be deposited were a trust fund, to the disposition of which the owner had consented in writing, reserving only the retained right to withdraw it in his lifetime but with lawful directions for its disposition, in case of his dying intestate, as specifically directed." It was determined also in that case that the pensioner had the right and power to make this disposition of his pension money.

There is nothing before us to indicate that the said trust was changed or modified by agreement of the parties, but it seems that since the decision was rendered in the Treadway case Congress has attached conditions to the appropriations of money for pensions and for the Home so as virtually to preclude the board of directors from exacting the deposit of the pension money when the warrant of the member is cashed. The policy of the law in this respect has thus been modified but the disposition of the balance as agreed upon by the parties is unaffected. The difference is that the balance is now in the possession of the pensioner rather than of the board and, as suggested by appellants, "the moneys now in dispute cannot be retained upon the theory that they have become a trust fund by reason of their having been *deposited* for the purposes of the trust and dependent, in a measure, upon possession by the trustee," but the moneys are subject to a trust by operation of the words of said statute in connection with the agreement of the pensioner reaching this very fund.

We need not concern ourselves with the policy of the law, although, as stated in the Treadway case, such policy cannot be declared harsh, ungenerous, or unjust.

It may be remarked that said section 10 was amended by the legislature in 1911 (Stats. 1911, p. 1447) so as to confine said trust fund to the balance of pension money held by the

board or by its authority and to any moneys belonging to the members and deposited with the board or with any of its officers, and providing that said trust fund be paid by the board directly and without probate to ''the heirs at law entitled thereto'' and if none be discovered, then to be paid to said post fund of the Home.  It is admitted, however, that this amendment did not go into effect until after the death of said Murphy, and it is not denied that the *status* of said money was fixed by the law in force at the time of said death.

We are unable to agree with the conclusions of the learned trial judge and the judgment is reversed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1913.