## Dilijonas Estate

*D. W. Patterson*, for Commonwealth.

*David W. Ketler* and *Arthur E. Ashton*, for guardian and Veterans' Administration.

McKAY, J., June 26, 1958.—There is before the court a rule to show cause why the Grove City National Bank, guardian of the estate of John Z. Dilijonas, an incompetent, should not pay from the funds of the estate in its hands a claim of the Pennsylvania Department of Public Assistance in the amount of $674.17. This sum represents money paid by the department for the sup-

port and maintenance of the incompetent, his wife and three minor children since August 25, 1956.

The guardian's answer to the rule admits that it has $660.36 in its hands, of which all but $7 is principal. The sum is made up of pension or compensation payments by the Veterans' Administration to the guardian for the incompetent's benefit in the amount of $9.60 per month from August 18, 1955, to July 31, 1956, and of $66.15 per month from August 1, 1956, to the date of filing the answer, January 6, 1958. The answer further avers that it is paying $50 per month from the guardianship account for the benefit of the incompetent.

The answer then asserts that, under an Act of Congress, veterans' payments are exempt from the claims of creditors and not liable to attachment, levy or seizure by legal process.

The question has been submitted to the court upon briefs filed whether, under the facts set forth in the petition and answer, the court should make the rule absolute.

The petition for reimbursement arises under the Act of September 26, 1951, P. L. 1455, sec. 2, 62 PS §1974, which provides:

"The real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or public agency may sue the owner of such property for moneys so expended, and any judgment obtained

shall be a lien upon the said real estate of such person, and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children."

It should be noted that the effect of granting the order prayed for would be to exhaust all of the funds in the hands of the guardian, leaving nothing for the veteran to use for his own support pending the obtaining of employment if he should regain his competency, or to pay his funeral expenses if he should die. This is a result which we would be reluctant to bring about even if it were to be granted that we have the power, in our discretion, to grant the order.

Under similar circumstances, but where the claim was that of a State hospital for the case of the veteran himself, the court in Northumberland County denied the claim: In re Stankiewicz, 13 Northumb. 266, 52 York 52. Still greater reason for denial appears in the present case where at least part of the Department's claim is for maintenance furnished to the incompetent's wife and children.

The distinction between claims for maintenance of his family and claims for maintenance of the veteran himself is recognized in the Incompetents' Estates Act which provides that the income of an estate may be expended for support of the incompetent within the reasonable discretion of the guardian, whereas expenditures for support of the incompetent's spouse or children must be with approval of the court for cause shown: Act of February 28, 1956, P. L. (1955) 1154, art. VI, sec. 644, 50 PS §3644.

Accordingly, in the exercise of our discretion, we will refuse to order the claim of the department to be

paid by the guardian from the meagre funds in its hands at this time.

Nor is the department in a position to demand payment as a matter of right. The incompetent's funds in the guardian's hands are exempt from the claims of creditors by the terms of the Act of Congress referred to above,* August 12, 1935. It reads:

(a) "Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary": 38 U. S. C. §3001.

That the act protects benefits paid to veterans by the Veterans' Administration from claims of all creditors, including claims of the Commonwealth itself for State taxes, is settled by Beall's Estate, 384 Pa. 14. While that case dealt with the proceeds of a national service life insurance policy paid to the estate of a deceased veteran, the Act of Congress, by its terms, applies to all benefits under laws administered by the Veterans' Administration. Hence, pension and compensation payments to veterans are equally exempt from attachment by creditors, including the Commonwealth.

It follows that the Department of Public Assistance, a Commonwealth agency, cannot attach, hence claim as a matter of right, the accumulated pension or compensation paid by the Veterans' Administration to the

---

* Chap. 510, §3, 49 Stat. 609, as amended by the Act of October 17, 1940, chap. 893, §5, 54 Stat. 1195, 38 U. S. C. §454a, reënacted as §1001, Public Law 56, 85th Congress, effective January 1, 1958, 38 U. S. C. §3001.

guardian of this incompetent veteran to satisfy its claim for reimbursement for funds advanced for the support of him and his family.

We are aware that it has been held that the Commonwealth is not a creditor within the meaning of the Act of Congress to which we have referred: Lulis Estate, 77 D. & C. 118; Matter of Grega, 7 D. & C. 2d 753.

The great majority of the lower courts, however, which have considered the question, have held that the Commonwealth is a creditor. In re Christian S. Bones, Incompetent, 34 Dauph. 385; Brusbard's Estate, 34 D. & C. 107 (C. P. No. 1, Phila. County) ; In re Estate of Virginia Bell Starr, August term, 1951, no. 46, Orphans' Court, Washington County (Anderson, P. J.) ; Estate of Nicholas Apoltolico, 35 Lack. Jur. 129; In re Musser, 19 D. & C. 526.

Moreover, the Supreme Court having settled the question in Beall's Estate, supra, there now remains no doubt that the Commonwealth is a creditor and, as such, is barred from legal process of any kind to attach pension or compensation payments made to veterans or their guardians .

### Order

Now, June 26, 1958, the rule to show cause why the funds in the hands of the Grove City National Bank, guardian of the estate of John Z. Dilijonas, an incompetent, should not be applied to payment of support grants of the Pennsylvania Department of Public Assistance is discharged.

### Exception

And now, June 26, 1958, to the foregoing order of the court, counsel for the Pennsylvania Department of Public Assistance excepts and, eo die, a bill of exceptions is sealed for the Pennsylvania Department of Public Assistance.