L. A. ANDREW, State Superintendent of Banking, Appellant, v. COLO SAVINGS BANK et al., Appellees.

APRIL 3, 1928.

*John Fletcher*, Attorney-general, and *Welty & Soper*, for appellant.

*John R. Larson*, for John H. Ridgway, appellee.

KINDIG, J.—There is little dispute concerning the facts, and the question before us for determination is very largely one of law. It is conceded that the Colo Savings Bank was an active  and going concern prior to the 13th day of February, 1926, and during its period of operation, John H. Ridgway, the appellee, on or about the 5th day of February of that year, deposited in the banking establishment $1,227.50, and he received at that time the following certificate therefor:

"Colo Savings Bank
"Certificate of Deposit                     72-1257   No. 8762.
                                "Colo, Iowa, Feb. 5, 1926.
"John H. Ridgway has deposited in this bank Twelve Hundred Twenty-seven and 50/100 Dollars ($1227.50) payable in current funds to the order of himself on return of this certificate properly endorsed 6 or 12 months after date with interest at 5% per annum from the time specified only.
                                "Albert Powers,
                                "Assistant Cashier."

That "deposit" represented pension money belonging to the appellee, and was obtained by him from the United States government for his services rendered it during the Civil War. When receiving this money, the bank knew the source from which it came, and understood that it was "pension money." These funds were thus placed in the depository without any other contract or agreement.

On February 13th, the Colo Savings Bank was declared

insolvent, and the state superintendent of banking was duly appointed receiver, to take charge thereof. Appellee, in due time, filed his claim for a preference, basing it upon the proposition that his "deposit" represented by said "certificate" was entirely composed of "pension money," as aforesaid, and therefore amounted to, and entitled him to the benefits of, a "preferred" claim.

This is the problem now confronting us for solution.

I. At the outset, it is argued by the claimant that "pension money" is exempt, and therefore he is afforded a special privilege in the distribution of the assets of this defunct bank. For an understanding of the issues here involved, it is necessary to study the very purpose and object of the "pension" relied upon.

Section 4747 of the United States Revised Statutes provides:

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

And the 1924 Code of Iowa, Section 11761, contains this:

"All money received by any person, a resident of the state, as a pension from the United States government, whether the same shall be in the actual possession of such pensioner, or deposited, loaned, or invested by him, shall be exempt from execution, whether such pensioner shall be the head of a family or not."

Manifestly, the intention of the state and the Federal government was to so surround the pensioner with protection that his creditors would not be able to seize the subject-matter of the bounty and thus deprive him of its use. In other words, during the course of human events, the thought became developed among states and nations, that, for the good of mankind, there are instances when it is best that creditors go unpaid, in order that certain individuals in society may have a particular source of income dedicated to personal or family sustenance, maintenance, and enjoyment. Primarily, the aim is to defend against the onslaught of creditors. Whose creditors? Clearly,

those of the debtor who has a right to assert the exemption, and none other.

Throughout the years of its application, this law has been confined to attempts of "creditors" to collect indebtednesses due them from the "pensioner," through the process of attachment, garnishment, execution, or some other system of levy and sequestration. For examples of this interpretation, we find, among many others, the cases of *McIntosh v. Aubrey*, 185 U. S. 122; *Crow v. Brown*, 81 Iowa 344; and *Treadway v. Board of Directors of Veterans' Home*, 14 Cal. App. 75 (111 Pac. 111). While these authorities are not exactly in point on the precise controversy before us, yet they are illustrative of many other similar "applications." Section 11761, supra, is contained in Chapter 499 of our Code, embracing exemptions from execution. Consequently, it is consistent with and within the purview of the legislative idea, as well as in harmony with the numerous judicial pronouncements, to hold that the exemption in this instance is limited in its scope to security against the encroachments of appellee's personal "creditors" only. Before he can have a "creditor," he must owe a debt. Was his property taken in the case at bar to satisfy a financial obligation which he owed to anyone? Therein lies the criterion for a decision here. An answer to the preceding interrogatory will determine this litigation.

II. As a result of the "deposit," if it were general, there was created between appellee and the bank the relationship of debtor and creditor. *Officer v. Officer*, 120 Iowa 389; *Hunt v. Hopley*, 120 Iowa 695; *Leach v. Beazley*, 201 Iowa 337; *Palo Alto County v. Ulrich*, 199 Iowa 1. Who, then, was the debtor, and who the creditor? Obviously, the bank, in such event, owed appellee. Forsooth, the latter "owed" no one through this transaction. So when, during the administration of the insolvent institution's affairs, the receiver, by appropriating the assets, was thereby using the bank's property for the payment of its liabilities, rather than appellee's money for the payment of his obligations. Said exemption statutes, therefore, become immaterial, under this status of appellee's affairs. He "owed" no debts, and had no creditor; therefore, the prerequisite for the operation of the exemption did not exist. Need for this shield does not appear, because no antagonistic creditor was approach-

ing. Hence, if the preference here granted were to be sustained, it must be upon some other ground.

III. A general "deposit" has the effect of passing title from the "depositor" over to the bank, and there it is mingled with other money of the financial concern. Accordingly, this  aggregate constitutes a single, fund for the benefit of "depositors." If insolvency befalls the institution, this common fund forms a source for dividends before which each "depositor" stands on an equality. *Officer v. Officer*, supra. Code of 1924, Section 9239, reads:

"The superintendent of banking may apply to the district court * * * or a judge thereof, for the appointment of said superintendent as receiver for such bank, and its affairs shall thereafter be under the direction of the court, *and the assets thereof after the payment of the expenses of liquidation and distribution shall be ratably distributed among the creditors thereof, giving preference in payment to depositors.*" (The italics are ours.)

Thus, in the receivership proceedings for the Bank of Colo, the superintendent of banking, as receiver, was entitled to, and did, use the property belonging to and owned by that concern for the payment and satisfaction of its "debts," as distinguished from any obligation of the appellee's.

IV. But it is urged, in behalf of the position taken by the trial court, that the final legal effect resulting from the acceptance of the particular fund consisting of  "pension money" amounted to, and was, a special, as distinguished from a general, "deposit." We defined certain relationships of this kind in *Officer v. Officer*, supra, as follows:

"A special deposit is created where the money is left for safe-keeping and return of the identical thing to the depositor. And a specific deposit exists when money or property is given to a bank for some specific and particular purpose, as a note for collection, money to pay a particular note, or property for some specific purpose."

See, also, 7 Corpus Juris 630, 631, Sections 306 and 307, respectively; *Iowa Mut. Liability Ins. Co. v. De La Hunt*, 197

Iowa 227. Those terms are sometimes interchanged (7 Corpus Juris, supra), and for the purposes of this appeal we will not attempt to make a differentiation between them, but will give the appellee the full benefit of his argument, even though he has confused specific with special "deposits." For whichever it is, there must be a definite provable contract creating the same. Referring again to the *Officer* case, supra, these words are found:

"Deposits are divided into general, special, and specific; and, in the absence of proof to the contrary, every deposit is presumed to be general."

The burden of proof, therefore, at this juncture must be carried by him who asserts his "deposit" is something other than general. Mere knowledge on the part of the bank that the  funds were "pension money" does not meet this "burden," because a contract does not arise therefrom alone. *Andrew v. Sac County State Bank*, 205 Iowa 1248. Also, see *Iowa Mut. Liability Ins. Co. v. De La Hunt*, supra, and *Palo Alto County v. Ulrich*, supra.

Wherefore, in the case at bar there is entirely wanting any evidence in the record which could be said in any way to establish an agreement between the bank and appellee for a specific or special "deposit." Rather, the showing is the other way, because a time "deposit," bearing interest, was made. Quite conclusively, under the circumstances here involved, that fixed the deposit as general. Under no circumstances was the exact money to be returned, and the bank assumed no duty to apply the proceeds of the transaction to any definite or prescribed object. Really, the only contractual undertaking entered into by the bank at the time of the "deposit" was to pay appellee the amount named in the "certificate" when due, together with the agreed interest thereon. And this the payor was legally bound to do, as in the case of all repayments of general deposits, by drawing from its own common resources, accumulated through the general transaction of the banking business, including the particular dealings with appellee here involved.

Therefore, appellee has not met the burden of proof, and has failed to establish his case. The claim should have been allowed, not as preferred, but as general.

Resultantly, the judgment and decree of the district court must be, and hereby is, reversed.—*Reversed.*

EVANS, FAVILLE, DE GRAFF, MORLING, and WAGNER, JJ., concur.