Beall Estate.

Argued September 29, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*William Claney Smith, Jr.,* for appellants.

*Thomas W. Neely, Jr.,* for appellee.

OPINION BY MR. JUSTICE JONES, January 3, 1956:

Walter K. Beall died testate on July 19, 1951. His will, which he had executed in 1932 while married, was rendered largely inoperative because of the effect of his subsequent divorce on his testamentary dispositions to his wife. He left surviving him two children who, by reason of the exclusion of their mother, became the accelerated and sole legatees in equal shares under their father's will. One of the children, a daughter, is an adult; the other is a minor son of whose estate Fidelity

Trust Company, of Pittsburgh, the executor, is testamentary guardian.

An ostensible asset of the decedent's estate, as shown by the executor's account, was a $10,000 National Service Life insurance policy which the insured had taken out on April 13, 1944, while he was in the military service of the United States. The insured had originally named his wife as the beneficiary of the policy, but after their divorce he had made his children the beneficiaries with his father as contingent beneficiary. However, on July 9, 1951, just ten days before his death, he initiated a further change of beneficiary as per the following requested endorsement: "If married and living with my wife, payable to her. If not married or estranged, to my estate." He died without having remarried. The Veterans' Administration recognized the insured's estate as the beneficiary of the National Service policy and paid the proceeds to his executor. Without the proceeds of the insurance policy, the decedent's estate was insolvent.

The contention on behalf of the insured's children is that the proceeds of the National Service policy were exempt from claims of his creditors and that, consequently, his estate had no other interest in the policy than to serve as a conduit for the passing of the proceeds of the insurance to the children, free and clear of the claims of the decedent's creditors.

The learned auditing judge held that, since the estate of the insured was the beneficiary of the policy, the proceeds of the insurance were an asset of the estate and, as such, liable for the payment of administrative costs and expenses and claims of creditors of the decedent. The decree of distribution, which was entered accordingly, all but exhausted the balance for distribution, including the $10,000 insurance money, by its awards to creditors. On exceptions, the court en banc

(one judge dissenting) confirmed the decree. This appeal followed.

The basic legal question involved is whether Congress, by the National Service Life Insurance Act of October 8, 1940, c. 757, 54 Stat. 1008, 38 U.S.C. §801, intended to exempt the proceeds of a matured National Service policy from claims of the insured's creditors.

Section 616 of the Act (38 U.S.C. §816) adopted by express reference §454a of 38 U.S.C. which was enacted as Section 3 of the Act of August 12, 1935, c. 510, 49 Stat. 609. Section 454a was, in turn, an amendment of §454, which, known as the Veterans Exemption Act, was contained in the 1924 amendment and consolidation of the various Veterans Acts (43 Stat. 607) and provided, in presently material part, that "Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, *shall be exempt from the claims of creditors,* and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, *either before or after receipt by the beneficiary*" (Emphasis supplied). The evident purpose of the foregoing provision was to make the payment of benefits under a National Service policy of insurance exempt from claims of creditors either before or after receipt of the proceeds by the beneficiary. And, where the beneficiary was the insured's estate, the creditors excluded would, of course, be the insured's creditors.

The learned court below was of the opinion, however, that when Congress, by the amendment of August 1, 1946, 60 Stat. 781, 38 U.S.C. §802 (g), removed the priorly existing restriction on the class of beneficiaries, which an insured was permitted to name, it did not intend thereby to bring the insured's estate, as a bene-

18

ficiary, within the term "beneficiary" as employed in Section 454a of the Act of 1935 but, on the contrary, threw open to the claims of the insured's creditors the proceeds of his National Service policy payable to his estate. We can find no logical basis for this conclusion.

The Veterans Acts from 1917 onward have evidenced a congressional intent to exempt, from the claims of creditors of the insured and of the beneficiary, the benefits of a military service insurance policy. The history of the National Service Life Insurance Act of 1940, which is the statute that authorized insurance, under government auspices, for members of the Country's military forces in World War II, closely paralleled the history of its predecessor, the War Risk Insurance Act of October 6, 1917, c. 105, 40 Stat. 398, which provided for term insurance for members of the Nation's military forces in World War I. The decisions under the earlier Act and its amendments are no less pertinent to the question here involved under the National Service Life Insurance Act of 1940. A review of the history and experience of both Acts is therefore essential.

Section 402 of the War Risk Insurance Act of 1917 prescribed that the proceeds of a policy should not be subject to the claims of creditors of the insured or of the beneficiary and restricted the permitted beneficiaries to "a spouse, child, grandchild, parent, brother or sister" of the insured. Approximately a year after the cessation of hostilities with the signing of the armistice on November 11, 1918, Congress amended the War Risk Insurance Act of 1917 by enlarging the class of permitted beneficiaries, adding thereto certain specified collaterals and providing further that, if there was no person within the permitted class of beneficiaries, the insurance should be paid to the estate of the insured: Act of December 24, 1919, 41 Stat. 371.

The various Acts relating to veterans' benefits and insurance were amended and consolidated by the Act of June 7, 1924, c. 320, 43 Stat. 607. This Act, known as the World War Veterans Act, provided, inter alia, that "the compensation, insurance, and maintenance and support allowance" payable under the various Veterans Acts should not be subject to the "claims of creditors of any person to whom an award is made" under the provisions of such Acts. Also, Section 301 of the Act of 1924 required that all existing term insurance of veterans should be converted to government insurance by July 2, 1926. The date of conversion was thereafter successively extended to July 2, 1927.

The World War Veterans Act of 1924 was further amended by the Act of May 29, 1928, c. 875, 45 Stat. 964. By that amendment, all restrictions with respect to the class of permitted beneficiaries of converted term insurance were removed. Thenceforth, practically all veterans term insurance that was converted to United States Government life insurance was unlimited as to permitted beneficiaries. The legislative history of the Act of 1928 so confirms: see Report No. 1297, 70th Cong., 1st Sess., Congressional Record Vol. 69, Part 6, p. 6575. And, such was the administrative interpretation of Section 300 of the War Veterans Act of 1924, as amended by the Act of May 29, 1928: Circular No. 496 (Adjudication Service) Veterans' Bureau, November 15, 1928. See also opinion of Justice VINSON of the Court of Appeals for the District of Columbia in *Small v. United States,* 110 F. 2d 122, 124.

In 1934, the Supreme Court held in *Pagel v. Pagel,* 291 U.S. 473, 476, that the proceeds of a War Risk insurance policy paid to the estate of the insured was not exempt from the claims of creditors under §454 of the World War Veterans Act of 1924. This ruling was understandably made, as stated in the opinion for the

court, because "The language of the statute [§454] limits the exemption to 'any person to whom an award is made.'" However, it was not long thereafter until Congress acted to supply what was then evidently considered an omission in §454 which was done by the Act of August 12, 1935, supra, whereby §454 was repealed and §454a enacted. Subsequently, the Code of Federal Regulations interpreted §454a as meaning that "The proceeds of a United States Government life insurance policy shall not be subject to the claims of creditors of the insured or creditors of any beneficiary to whom the proceeds may be awarded . . .": 38 Code of Federal Regulations §10.3062 (1938 Ed.).

The question of exemption of the proceeds of a veteran's government insurance from claims of creditors has not recurred in the Supreme Court of the United States since the enactment of §454a, and opinion of other courts on the subject has not been entirely unanimous. However, it is our opinion that the better judicial view is that the proceeds of a National Service policy paid to the insured's estate as beneficiary is exempt from claims of his creditors. As was observed by this court in *Fisher's Estate*, 302 Pa. 516, 523, 153 A. 736, with respect to War Risk insurance, "Congress was not interested in setting up a fund for creditors and excisors."

One of the earliest cases to reach court after the enactment of §454a was *In Re McCormick's Estate* in the Surrogate's Court for Kings County, New York, 8 N.Y.S. 2d 179, 188, 169 Misc. 672. In an exhaustive and well-reasoned opinion the surrogate held that the proceeds of a deceased veteran's government policy paid to his administrator were exempt from claims of creditors of the decedent. The opinion discussed and considered the effect of the decision in *Pagel v. Pagel* and concluded that the pointed alteration by §454a of the

limited language in §454 "must be deemed a demonstration of an intention [on the part of Congress] to alter the law as thus declared" in *Pagel v. Pagel.* In *Haley v. United States,* 46 F. Supp. 4 (1942), which involved a matured War Risk insurance policy, the insured had named himself as beneficiary, and the proceeds of the policy were paid to his personal representative. The court, in reliance on the decision in *In Re McCormick's Estate,* held that the insurance money was exempt from the claims of creditors, administrative expenses and attorney's fees. The most recent case in point is *In Re Frazier's Estate,* 124 N.Y.S. 2d 295, 297, 204 Misc. 542 (1953). In that case the deceased veteran had a policy of National Service Life insurance the proceeds whereof became payable to his estate upon his death in 1950. A claim was filed against the insured's estate for moneys advanced out of public funds for past support of the deceased veteran. The court held that the proceeds of the National Service Life insurance policy were exempt by virtue of §454a from claims of creditors of the decedent even though the particular creditor asserting the claim was an agency of the State and, under local law, a preferred creditor. The court said, inter alia, that "It is clearly the intention of the government that the proceeds of War Risk Insurance shall be payable to those *dependents* and *relatives* of the veteran whom he would have preferred to receive them, exempt from the claims of any creditor and it appears that the act as now effective [since §454a] secures this result."

No useful purpose would be served in prolonging the discussion. It is our opinion that in the various Acts relating to the insurance of veterans, both under the War Risk Insurance Act of 1917 and the National Service Life Insurance Act of 1940, Congress clearly indicated an intent that the proceeds of a matured policy of veterans' insurance should be exempt from

claims of creditors of the insured. Such intent was not retracted in the slightest degree by the 1946 amendment which removed the restrictions on the class of permissible beneficiaries. The 1946 amendment was not concerned with the abrogation or even limitation of the benefit of exemption from claims of creditors. In short, there was no relationship between the legislative provisions concerning the designation of beneficiaries and the provision of §454a exempting the proceeds of a National Service Life insurance policy from the claims of creditors.

The exemption thus determined runs against a tax claim of the United States such as was presented at the audit below. In 1940, §454a was amended (Act of October 17, 1940, c. 893, §5, 54 Stat. 1195) so as to read in part as follows: "From and after October 17, 1940, this section shall be construed to prohibit the collection by set-off or otherwise out of any benefits payable pursuant to any law administered by the Veterans' Administration and relating to veterans, their estates, or their dependents, of any claim of the United States or any agency thereof against (a) any person other than the indebted beneficiary or his estate; or (b) any beneficiary or his estate except amounts due the United States by such beneficiary or his estate by reason of overpayments or illegal payments made under such laws relating to veterans, to such beneficiary or his estate or his dependents as such. . . ." Likewise, tax claims by the State (of which there was one presented and allowed below) are excluded by §454a from payment out of the proceeds of War Risk insurance: see *Wanzel's Estate*, 295 Pa. 419, 425, 145 A. 512, which quoted liberally from *Tax Commission of Ohio v. Rife*, 119 Ohio 83, 162 N.E. 390, where it was said, inter alia, "The [federal] exemption from taxation must dominate over the succession tax statutes of Ohio." Cf. also *Schmuckli's Estate*, 341 Pa. 36, 41, 17 A. 2d 876.

Nor does the testator's direction that his just debts be paid operate as a waiver of the exemption against claims of creditors. "Such a direction in Pennsylvania is a mere matter of form": *Dembinski's Estate*, 316 Pa. 61, 63, 173 A. 314, citing *Mayer's Estate*, 289 Pa. 407, 410, 137 A. 627, and *Byrne v. Byrne*, 3 S. & R. 52, 61. More particularly, in *Fisher's Estate*, supra, where the will of the deceased soldier provided for the payment of his debts, the direction was ineffectual to offset the federally imposed exemption of the proceeds of his War Risk insurance policy against claims of the insured's creditors.

The proceeds of the National Service insurance policy in the instant case, now in the hands of the insured's executor, are, therefore, distributable to his two children, free and clear of the claims of creditors. The conception of a fund's passing through an estate without becoming a part thereof is not new to the law of this State. In *Fisher's Estate*, supra, which, as already indicated, was concerned with the proceeds of a War Risk insurance policy, Mr. Justice KEPHART observed for this court (pp. 523-524) that "It is not difficult to conceive of a piece of property that is to be devoted to a particular use or purpose traveling through an estate freed from ordinary claims and retaining the same characteristics with which it started; this is the effect of Wanzel's Est., supra. The estate is a mere conduit to carry out the intent of Congress until the fund reaches the designated persons." The exempted proceeds of the National Service insurance policy do not pass as a part of the deceased insured's estate but go to his two children, his designated legatees. The will merely identifies the recipients but does not operate to transfer the insurance fund to them. That occurs by virtue of federal law. Just as in a case of intestacy, "The intestate laws [of the State] do not operate upon the decedent's

[exempted government insurance], but are referred to in order to determine who shall take the proceeds of the insurance . . .": *Wanzel's Estate,* supra, p. 424, quoting from *Tax Commission of Ohio v. Rife,* supra.

Decree reversed and record remanded with directions that a decree be entered in conformity with this opinion; costs to be borne by the estate.