# SMOLIN *v.* FIRST FIDELITY SAVINGS AND LOAN ASSOCIATION, INC.

[No. 206, September Term, 1964.]

*Decided April 27, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, SYBERT and BARNES, JJ.

*Rolf A. Quisgard, Jr.,* with whom was *Marvin Steinberg* on the brief, for the appellant.

*Eugene A. Alexander, III,* with whom was *H. Paul Rome* on the brief, for the appellee.

BARNES, J., delivered the opinion of the Court.

This appeal resulted from the denial by the Circuit Court of Baltimore City (Oppenheimer, J.) of the petition of Edwin M. Smolin, the appellant (Smolin), filed April 24, 1963, to require the conservator (now receiver) of the First Fidelity

Savings & Loan Association (First Fidelity) to pay Smolin the sum of $4969.35, allegedly Veterans Disability Retirement payments deposited by Smolin in Account No. 60483 of the Association. Judge Oppenheimer had overruled the exception of Smolin to the Report of a Special Master in which it was recommended that the relief prayed for in the Smolin petition be denied.

The facts are not in dispute, and are as follows: On September 23, 1947, Smolin, a Second Lieutenant in the United States Army in World War II, was granted Veteran Retirement pay in the amount of $184.05 monthly, and has been paid this monthly retirement pay since that time. At the time of allowance of the retirement pay by the Army Retirement Board, Smolin lived in Iowa City, Iowa. Thereafter he moved to Connecticut. He now resides at Springdale, Connecticut. He opened a savings account (No. 128082) in the name of himself "or Shirlee J. Smolin, payable to either or survivor" in the Stamford Savings Bank, Stamford, Connecticut. A photostatic copy of this account, which is in the record, shows a balance of $9,973.12 as of January 2, 1959. From January 5, 1959 to September 6, 1960, there were 25 separate deposits in the account ranging from $54.07 to $684.05. There was one deposit, on January 4, 1960, in the amount of $184.05. During the period mentioned there were four withdrawals: $2400.00 on January 22, 1959, $250.00 on May 14, 1959, $970.00 on May 19, 1959 and $1000.00 on April 4, 1960. The balance on September 16, 1960 was $12,704.06. Interest of $205.16 was added on October 1, 1960 which gave a balance as of that date of $12,909.22. During this period there were credits for interest in addition to the $205.16 mentioned. These were $68.39 on April 1, 1959, $14.15 on October 1, 1959 and $188.70 on April 1, 1960. These interest payments indicate an interest rate on the basis of approximately 3% per annum. On October 3, 1960 there was a withdrawal of $5000.00 reducing the balance to $7,909.22. Smolin claims that during the twenty month period from January 2, 1960 through September 6, 1960 he accumulated $3,-681.00 of retirement pay ($184.05 x 20) which was a part of the $5000.00 withdrawn from the Stamford account on October 3, 1960 to establish a new account (No. 60483) in First Fi-

delity in Baltimore. The signature card for Account No. 60483, signed by Smolin and Shirlee J. Smolin, gives their address as "82 Deep Spring Lane, Springdale, Conn." and recites: "Savings Share Account: Two Party Joint Trust, subject to order of either (with right of survivorship)." It then has the usual Maryland trust form "Edwin M. Smolin in trust for himself and Shirlee J. Smolin" as joint owners, subject to the order of either, the balance at death of either to belong to the survivor." Then is recited "The undersigned hereby apply for a savings share account" in First Fidelity * * * in accordance with provisions and in the form provided for on the face and reverse sides hereof, subject to its Charter and By-laws, and amendments thereto, to the rules, regulations and laws governing said Association and subject also to the following: Each of the undersigned hereby authorizes the other to endorse any check or instrument payable to the order of the other or both and to present same for credit to this account."

On the face and reverse sides appeared the following:

"This certifies that the above named is/are *members* of First Fidelity Savings & Loan Assn., Inc. This *certificate* is issued and by acceptance hereof is held subject to all the provisions of the Charter and By-laws of the Association and *the laws of the State of Maryland* and is *transferable on the books* of the undersigned (First Fidelity) by the *holder* hereof in person or by duly authorized attorney upon surrender of *this certificate properly endorsed.* The undersigned (First Fidelity) may treat the *holder of record* in the manner in which *membership* was made as the owner for all purposes, without being affected by any notices to the contrary, until *this certificate,* representing a *preferred stock interest* in the Association, is transferred on the books of the undersigned (First Fidelity). *Certificates* will not be transferred unless and until the transferee has made *proper application for membership* and has been accepted as a member of the undersigned" (First Fidelity).

Immediately under this statement appears: "Savings Department. Savings *invested* here are intelligently and economically managed and are profitably employed to *earn generous dividends* for you. Regular savings promote the thrift habit, enabling you to *reach financial independence* or any goal you set

\* \* \*." Under the heading *"Dividends"* appears: *"Dividends* are credited semi-annually, June 30 and December 31. Deposits made on or before the 20th of each month receive credit for the entire month when left to the end of the dividend period." There also appears a form of *Transfer of Share Account and Membership"* which recites that "For value received the undersigned hereby *sells, assigns and transfers* to .............. the *share account* on the books of said association." Then there are blanks for the date, signature and witnesses followed by "The undersigned is the *transferee* of the *share account* represented by the within *certificate* and has executed application for membership and signature card." Then follows a blank for the signature of the transferee with a notation *"Transfer entered of record ....* ................ 19 ....." (All emphasis supplied.)

A transcript of Account 60483 in First Fidelity is in the record. Under "Name" appears "Smolin, Edwin M. or Shirlee J." The original deposit is for $5000.00, dated as of July 22, 1960. There are two *dividend* credits of $125.00 and $128.12 respectively on October 2, 1961. There is also a *dividend* credit of $137.27 as of January 5, 1962. In addition to the original deposit of $5000.00 there were 12 deposits between October 2, 1961 and May 14, 1962 ranging in amount from $65.30 to $351.95. On November 3, 1961, there was a deposit of $184.05. The balance as of May 14, 1962 was $8,049.73. There was a deposit of $329.28 as of June 12, 1962, but as the conservator took over the assets of First Fidelity on June 2, 1962, this deposit was apparently returned, leaving the final balance $8,-049.73. Other than this return of the deposit of June 12, 1962, there were no withdrawals of any kind from the First Fidelity account. The dividends credited indicate a dividend rate of 5% on an annual basis.

Smolin claims that beginning with the $184.05 deposit on November 3, 1961, and for the six months thereafter to and including May 3, 1962 (a total of seven months), the subsequent deposits all being in excess of $184.05 represent deposits by him by mail of his monthly disability payments of $184.05, a total of $1288.35, which, with the amount of $3687.00 claimed as included in the original deposit of $5000.00 from the Stamford account, represents a total of $4969.35 claimed as deposited

veteran disability payments. No duplicate deposit slips from either the Stamford Savings Bank or from First Fidelity are in the record. We will assume for the purposes of this case, but without deciding, that Smolin has traced the monthly disability payments of $184.05 for which he claims priority, into Account No. 60483.

Smolin claims the right to priority of payment by the conservator (now receiver) of First Fidelity of $4969.35 of the balance of Account No. 60483 of $8,049.73 by virtue of the Act of Congress of August 12, 1935, c. 510, section 3, 49 Stat. 609, codified as 38 U.S.C. §3101(a), which provides in pertinent part:

> "Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments."

The Act of August 12, 1935, c. 510, repealed two earlier Acts on the same subject. In effect this consolidated the two earlier Acts and added the phrase "either before or after receipt by the beneficiary."

The earlier Acts on the same subject were:

1) Act of March 3, 1873, c. 234, s. 33, 17 Stat. 575 (Revised Statutes 4747, par. 4) which provided:

> "No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the Pension Office, or any officer or agent thereof, or is in course

of transmission to the purchaser entitled thereto, but shall inure wholly to the benefit of such pensioner."

2) World War Veterans Act of June 7, 1924, c. 320, s. 22; 43 Stat. 613, which provided:

"That the compensation, insurance, and maintenance and support allowance payable under Titles II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Titles II, III, or IV; and shall be exempt from all taxation; * * *"

It will be noted that the phrase "shall not be liable to attachment, levy, or seizure under any legal or equitable process whatever" is taken verbatim from the Act of March 3, 1873, c. 234, s. 33. Both prior and subsequent to the passage of the Act of August 12, 1935, c. 510, the Courts construed this language to mean attachment, levy or seizure by process issued by a creditor of the veteran and not to mean an exemption from liability for obligations which were not *debts* of the veteran, such as the obligation to pay alimony,[1] support of children,[2] claims by the State for maintaining the incompetent veteran,[3] or compensation to a committee for the incompetent veteran.[4]

---

1. In re Flanagan, 31 F. Supp. 402 (1940, D. Ct. D. C.). Hannah v. Hannah, 191 Ga. 134, 11 S. E. 2d 779 (1940, S. Ct. of Ga.). Stirgus v. Stirgus, 172 Miss. 337, 160 So. 285 (1953, S. Ct. of Miss.). Stone v. Stone, 188 Ark. 622, 67 S. W. 2d 189 (1934, S. Ct. of Ark.).

2. Application of McCarthy, 178 N. Y. S. 2d 403, 6 A. D. 2d 1029 (1958, S. Ct. of N. Y. App. Div.); In re Gardner, 220 Wis. 493, 264 N. W. 643 (1936, S. Ct. of Wis.); Pishue v. Pishue, 32 Wash. 2d 750, 203 P. 2d 1070 (1949, S. Ct. of Wash.); Gaskins v. Security First Nat. Bank of Los Angeles, 30 Cal. App. 2d 409, 86 P. 2d 681 (1939, D. Ct. of Ap. Cal. 2nd Dist.); Dillard v. Dillard, 341 S. W. 2d 668 (1961 Tex. Civ. App.); Auditor General v. Olezniczak, 302 Mich. 336, 4 N. W. 2d 679 (1942, S. Ct. of Mich.).

3. State v. Bean, 159 Me. 455, 195 A. 2d 68 (1963, S. Ct. of

---

4. Hines v. McKenzie, 216 Iowa 1388, 250 N. W. 687 (1933, S. Ct. of Iowa); In re Giambastiani's Estate, 1 Cal. App. 2d 639, 37 P. 2d 142 (1934, D. Ct. of Ap. of Cal., 2nd Dist.).

The Act of August 12, 1935, c. 510, s. 3 was included without change in the consolidation of all laws administered by the Veterans' Administration in the Act of September 2, 1958, Pub. L. 85-857, 72 Stat. 1229, so that it may be assumed that the prior judicial construction of the language was known to, and approved by Congress in this re-enactment. *Sherman v. Hamilton*, 295 F. 2d 516 (1961, Cal.), *cert. den.* 369 U. S. 820, 82 S. Ct. 827, 7 L. Ed. 2d 785 (1962); *Mahoney v. Board of Supervisors of Elections*, 205 Md. 380, 387, 109 A. 2d 110 (1954).

We indicated such a construction of the statute in 1936 in *Yake v. Yake*, 170 Md. 75, 79, 183 A. 555, where Judge Shehan stated for the Court: "The statute not only prohibits assignments but protects the compensation, allowance or relief *from claims of creditors* and from taxes." (Emphasis supplied).

The Supreme Court of Indiana in 1957 held that this was the proper construction in *Voelkel v. Tohulka*, 236 Ind. 588, 141 N. E. 2d 344; the Supreme Court of the United States denied certiorari on December 9, 1957, 355 U. S. 891, 78 S. Ct. 263, 2 L. Ed. 2d 189.

This construction of the type of levy, attachment or seizure intended is also indicated and reinforced by the provisions of Subparagraph (c) of 38 U.S.C. § 3101 which provides:

"(c) Notwithstanding subsection (a), payments of benefits under laws administered by the Veterans' Administration shall not be exempt from levy under subchapter D of chapter 64 of the Internal Revenue Code of 1954 (relating to seizure of property for collection of taxes)."

It will be noted also that there is nothing in the statute which purports to give specifically a priority to the funds in an in-

Me.); In re Simpson, 61 N. Y. S. 2d 529, 270 App. Div. 902 (1961, S. Ct. of N. Y. App. Div.), appeal dismissed 296 N. Y. 831, 72 N. E. 2d 20; Savoid v. District of Columbia, 288 F. 2d 851 (1961, Ct. of Ap. D. C.); In re Guardianship of Bemowski, 3 Wis. 2d 133, 88 N. W. 2d 22 (1958, S. Ct. of Wis.); In re Todd's Estate, 243 Iowa 930, 54 N. W. 2d 521 (1952, S. Ct. of Iowa); Department of Public Welfare v. Allen, 255 Ky. 301, 74 S. W. 2d 329 (1934, Ct. of Ap. of Ky.).

solvency proceeding. In *Shippee v. Commercial Trust Co.*, 115 Conn. 326, 161 A. 775 (1932, S. Ct. of Er. of Conn.), it was held that there was no such priority under 31 U.S.C. §191, giving claims of the United States a priority status in insolvency proceedings.[5]

It appears that the protection given to the veteran by the federal legislation is analogous to the protection given by private persons to the objects of their bounty by means of the "spendthrift trust," which we first sustained in 1888 in *Smith v. Towers*, 69 Md. 77, 14 A. 497 (1888) and which we have uniformly enforced since that case. See *Manders v. Mercantile Trust Co.*, 147 Md. 448, 453, 128 A. 145 (1925); *Hitchens v. Safe Deposit & Trust Co.*, 193 Md. 53, 66 A. 2d 93 (1949). The results to be obtained are similar, i.e., to protect the beneficiary from his own improvidence by removing the income and principal from the reach of his creditors. The federal legislation broadens the protection by including an exemption from execution by creditors even after receipt by the beneficiary, as in the federal exemption, a spendthrift beneficiary is not protected against claims which are not of *his creditors*, such as claims for alimony and support of his children. *Safe Deposit & Trust Co. v. Robertson*, 192 Md. 653, 65 A. 2d 292 (1949). The spendthrift beneficiary is not protected against the claims of the United States for income taxes payable on the protected income. *Mercantile Trust Co. v. Hofferbert*, 58 F. Supp. 701 (1944); *U. S. v. Mercantile Trust Co.*, 62 F. Supp. 837 (1945). It is clear, however, that when the money is received by the spendthrift beneficiary or when it is invested by him, it is available for the claims of creditors if they are able to reach it by execution, or otherwise. *Fetting v. Flanigan*, 185 Md. 499, 45 A. 2d 355 (1946). He, of course, has no claim of priority in any insolvency proceeding, as his creditors are not involved, and the protection does not continue to the fund created by the spendthrift beneficiary after he receives the money.

---

5. It has been held that there was no priority of a veteran's savings deposit in an insolvent bank of the proceeds of a loan on an adjusted service certificate under 31 U.S.C. §191 on the theory that the funds were those of the United States. People, ex rel, Nelson v. Stony Island State Savings Bank, 358 Ill. 118, 192 N. E. 682 (1934, S. Ct. of Ill.).

We are of the opinion that the holding of the assets of an insolvent savings and loan association by a conservator or receiver of an insolvent savings and loan association is not an attachment, levy or seizure by a creditor of the veteran as contemplated by 38 U.S.C. §3101(a). We have seen that the provision "shall not be liable to attachment, levy, or seizure under any legal or equitable process whatever," carried over from the Act of March 3, 1873, means, by judicial construction and by the acquiescence of Congress, attachment, levy or seizure *issued by a creditor* of the veteran. The conservator, appointed by the equity court, was no creditor of the veteran. He held the assets temporarily for the equity court to determine the proper course of action pursuant to Code (1964 Cum. Supp.) Art. 23, Sec. 161K. (Act of 1961, Ch. 205). If within 6 months the irregularities complained of in the petition for the appointment of a conservator are not corrected, a receiver then could be appointed under Code (1964 Cum. Supp.) Art. 23, Sec. 161L. The receiver is also no creditor of the veteran. His custody is the custody of the court. He is an indifferent person between the parties and is appointed on behalf of all the parties who have rights in the suit, including the veteran. See *Atlanta Flooring & Insulation Co., Inc. v. Russell,* 146 F. 2d 884, 888 (1945, 5th Cir., Holmes, Ct. J.). See also 75 C.J.S. "Receivers," §103, pages 746-747.

As was well stated in 10 Am. Jur. 2d, *Banks,* §801, page 772:

> "The mere fact that funds deposited in a bank are exempt from claims of creditors of the depositor does not entitle the depositor, upon the subsequent insolvency of the bank, to a preference out of its assets. This rule applies, for instance, to deposits of pension money, war risk insurance proceeds, and veterans' compensation, so exempted. Furthermore, it has been settled by the United States Supreme Court that a deposit, made by the guardian of an incompetent veteran in a bank which subsequently became insolvent, of war risk insurance and disability compensation payments received from the government is not entitled to

priority of payment out of the assets of the bank as a debt due the United States."

The Supreme Court case referred to is *Spicer v. Smith,* 288 U. S. 430, 53 S. Ct. 415, 77 L. Ed. 875, 84 A.L.R. 1525 (1933) ; Cf. *Pagel v. Pagel,* 291 U. S. 473, 54 S. Ct. 497, 78 L. Ed. 921 (1934).

See also *Andrew v. Colorada Savings Bank,* 205 Iowa 872, 219 N. W. 62 (1928), in which the Supreme Court of Iowa, after construing the Act of 1873, c. 234, s. 33 (Rev. St. §4747), as providing an exemption from execution from the creditors of the veteran only, stated:

> "Manifestly, the intention of the state and the Federal government was to so surround the pensioner with protection that his creditors would not be able to seize the subject-matter of the bounty and thus deprive him of its use. In other words, during the course of human events, the thought became developed among states and nations that for the good of mankind, there are instances when it is best that creditors go unpaid in order that certain individuals in society may have a particular source of income dedicated to personal or family sustenance, maintenance, and enjoyment. Primarily, the aim is to defend against the onslaught of creditors. Whose creditors? Clearly, those of the debtor who has a right to assert the exemption, and none other. * * *
>
> "Consequently, it is consistent with and within the purview of the legislative idea, as well as in harmony with the numerous judicial pronouncements, to hold that the exemption in this instance is limited in its scope to security against the encroachments of appellee's personal 'creditors' only. Before he can have a 'creditor,' he must owe a debt. Was his property taken in the case at bar to satisfy a financial obligation which he owed to anyone? Therein lies the criterion for a decision here. * * *
>
> "So when, during the administration of the insolvent institution's affairs, the receiver, by appropriat-

ing the assets, was thereby using the bank's property for the payment of its liabilities, rather than appellee's money for the payment of his obligations. * * * He 'owed' no debts, and had no creditor; therefore, the prerequisite for the operation of the exemption did not exist."

For the reasons stated the Smolin claim is not entitled priority over the claims of the other free shareholders.

Smolin relies on the decision of the Supreme Court of the United States in *Porter v. Aetna Casualty & Surety Co.*, 370 U. S. 159, 82 S. Ct. 1231, 8 L. Ed. 2d 407 in which it was held that a judgment creditor of an incompetent veteran could not successfully maintain an attachment against the accounts of the committee of the veteran in two federal building associations in the District of Columbia, the accounts being fully insured by the Federal Savings and Loan Insurance Corporation and the money in the accounts represented in substantial part deposits of the incompetent veteran's disability payments needed for his support and maintenance, on the theory that the funds retained the characteristics of money rather than those of an investment.

It may well be that the facts in the case at bar and the Maryland law in regard to the status of free shares in building and loan associations [6] distinguish this case from *Porter,* but, because of our opinion above set forth in regard to the proper construction of 38 U.S.C. §3101(a), we do not deem it necessary to pass upon the issue as to whether or not the funds of Smolin in First Fidelity for which a right to priority is claimed, were an investment.

*Order affirmed, the appellant to pay*
*the costs.*

---

6. Cf. Jolly v. First Union Savings & Loan, Inc., 235 Md. 161, 201 A. 2d 4 and Acts of 1961, Chapter 205, Code (1964 Cum. Supp.), Art. 23, §161X.