**In re Norma Howard SMITH a/k/a Norma H. Smith, Debtor.**

**Bankruptcy No. 99–30928.**

United States Bankruptcy Court, E.D. Tennessee.

Nov. 24, 1999.

Andrew N. Hall, Wartburg, Tennessee, for debtor.

Gentry, Tipton, Kizer & McLemore, P.C., Maurice K. Guinn, Knoxville, Tennessee, for trustee.

### MEMORANDUM ON TRUSTEE'S OBJECTION TO EXEMPTION

RICHARD S. STAIR, Jr., Chief Judge.

Before the court is the Objection to Amended Exemption Claim filed by Maurice K. Guinn, the Chapter 7 Trustee, on July 8, 1999. At issue are the exemptions claimed by the Debtor, Norma Howard Smith, under 38 U.S.C.A. § 1970(g) (West Supp.1999) and 38 U.S.C.A. § 5301 (West 1991 & Supp.1999), for $10,000.00 in proceeds from a National Service Life Insurance Policy. Pursuant to the Order entered by the court on August 5, 1999, this matter will be decided on the Stipulation of Facts and Documents filed by the parties on August 19, 1999. The Brief of Debtor and the Brief in Support of Trustee's Objection to Amended Exemption Claim were filed on September 15, 1999.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

### I

Stephen Dennis Smith, the Debtor's deceased husband, was a veteran of the United States Navy. He received a November 20, 1978 letter from M.R. Melzer, Chief of the Insurance Division of the Veterans Administration, informing him of his po-

tential eligibility for a special type of National Service Life Insurance, designated RH insurance, because of a service-connected disability. The letter included a statement that "this insurance is separate from and in addition to any Servicemen's Group Life Insurance or Veterans' Group Life Insurance you may have or obtain." Mr. Smith thereafter obtained RH Insurance Policy No. RH 1690 95 10 in the amount of $10,000.00. An Annual Insurance Policy Statement mailed on August 3, 1998, indicates that the policy was renewed for a five-year term on August 1, 1998.

Mr. Smith died in December 1998. As the beneficiary of RH Insurance Policy No. RH 1690 95 10, the Debtor received a United States Treasury check, dated March 7, 1999, in the amount of $10,000.00. The next day, March 8, 1999, the Debtor filed a petition under Chapter 7. She used a portion of the $10,000.00 life insurance proceeds to purchase certificate of deposit No. 910–006–1939–3940 at NationsBank in Delray Beach, Florida, on March 17, 1999. The certificate of deposit has an available balance exceeding $9,000.00.

In her Schedules filed March 8, 1999, the Debtor disclosed an interest in a "VA Life Insurance Policy" which she valued at $10,000.00. Initially, she claimed a $10,-000.00 exemption in the property under TENN.CODE ANN. § 26–2–110(a) (1980).[1] The Trustee objected to the exemption, and the court entered an Order Sustaining Objection to Exemption Claim on June 28, 1999. Prior to this, however, on June 17, 1999, the Debtor filed an Amendment to Schedules asserting an exemption in the insurance proceeds under 38 U.S.C.A. § 1970(g) in the amount of $9,170.00, under 38 U.S.C.A. § 5301 in the amount of $10,000.00, and under TENN.CODE ANN. § 26–2–102 (1980) in the amount of $830.00. The Trustee filed his Objection to Amended Exemption Claim on July 8,

1999, by which he objects to the federal exemptions claimed under § 1970(g) and § 5301.[2]

## II

■ The Debtor claims that $9,170.00 of the proceeds of the National Service Life Insurance Policy is exempt under 38 U.S.C.A. § 1970 (West 1991 & Supp.1999), which provides, in material part:

(g) Any payments due or to become due under Servicemembers' Group Life Insurance or Veterans' Group Life Insurance made to, or on account of, an insured or a beneficiary shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

The Trustee objects to the exemption claimed under § 1970(g) because the language of the statute specifically includes only two categories of insurance, Servicemembers' Group Life Insurance and Veterans' Group Life Insurance.

■ A guiding principle of statutory construction is that "the expression of one thing is the exclusion of others." *Springer v. Government of the Philippine Islands,* 277 U.S. 189, 48 S.Ct. 480, 484, 72 L.Ed. 845 (1928); *see also Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1357 (6th Cir.1995) (acknowledging the maxim "expressio unius est exclusio alterius" which means that "the mention of one thing implies exclusion of another"); *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 658 F.2d 1149, 1158 (7th Cir.1981) (same). This principle applies generally, however, it is not a steadfast rule and "must yield whenever a contrary intention on the part of the lawmaker is apparent." *Springer,* 48 S.Ct. at 484; *see also Cisneros,* 52 F.3d

---

1. Section 26–2–110(a) exempts benefits paid under any accident, health, or disability insurance policy.

2. The Trustee does not object to the exemption under TENN.CODE ANN § 26–2–102, Tennessee's general personal property exemption statute.

at 1357–58; *Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 658 F.2d at 1158.

The language of the exemption under § 1970(g) is clear and specifically includes only two categories of insurance, Servicemembers' Group Life Insurance and Veterans' Group Life Insurance. The distinct nature of the life insurance policies is evidenced by their separate statutory provisions. National Service Life Insurance is governed by 38 U.S.C.A. §§ 1901–1929 (West 1990 & Supp.1999), while Servicemen's Group Life Insurance is governed by 38 U.S.C.A. §§ 1965–1979 (West 1990 & Supp.1999) and Veterans' Group Life Insurance is governed by 38 U.S.C.A. § 1977 (West 1990 & Supp.1999), within the Servicemen's Group Life Insurance provisions. The exemption is codified at § 1970(g), within the statutory provisions for Servicemen's Group Life Insurance. In addition, in his November 20, 1978 letter to the Debtor's husband, the Chief of the Insurance Division of the Veterans Administration described National Service Life Insurance as "separate from and in addition to any Servicemen's Group Life Insurance or Veterans' Group Life Insurance [that he] may have or obtain." Adhering to the principle that the mention of one implies the exclusion of others, National Service Life Insurance is not within the scope of 38 U.S.C.A. § 1970(g).

There is no indication that Congress intended § 1970(g) to apply to National Service Life Insurance. The Debtor cites no authority or legislative intent to suggest that the exemption may be exported to the statutory provisions governing National Service Life Insurance or that 38 U.S.C.A. §§ 1901–1929 and 38 U.S.C.A. §§ 1965–1979 were intended to overlap such that the exemption in the latter provisions could apply to those of the former.

The exemption provided in § 1970(g) does not apply to the insurance proceeds at issue.

### III

■ The Debtor also asserts an exemption in the insurance proceeds under another veterans' benefits statute, 38 U.S.C.A. § 5301(a) (West 1991), which provides, in material part:

Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

Statutes involving veterans' benefits should be liberally construed to "protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof." *Porter v. Aetna Cas. and Sur. Co.*, 370 U.S. 159, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407 (1962) (deciding whether veterans' benefits retained exempt status when deposited into an account with a federal savings and loan) (citing *Trotter v. Tennessee*, 290 U.S. 354, 54 S.Ct. 138, 139, 78 L.Ed. 358 (1933)).

■■ Section 5301(a) does not specify whether the exemption protects insurance proceeds from the claims of creditors of both a beneficiary and the veteran or those of the veteran alone. When statutory language is unclear, courts may look beyond the statute to the intent behind it. *See United States v. Winters*, 33 F.3d 720, 721 (6th Cir.1994). In the present matter, § 5301(a) is unclear because it is capable of two different meanings. Under those circumstances, courts employ the following rule of construction:

The general rule is perfectly well settled that, where a statute is of doubtful meaning and susceptible upon its face of two constructions, the court may look into prior and contemporaneous acts, the reasons which induced the act in question, the mischiefs intended to be remed-

ied; the extraneous circumstances, and the purpose intended to be accomplished by it, to determine its proper construction.

*Hamilton v. Rathbone*, 175 U.S. 414, 20 S.Ct. 155, 157, 44 L.Ed. 219 (1899); *Northern Trust Co. v. Essaness Theatres Corp.*, 103 F.Supp. 954, 960 (N.D.Ill.1952); *Jewell Ridge Coal Corp. v. Local 6167 United Mine Workers*, 53 F.Supp. 935, 949 (D.Va. 1944), *cert. denied*, 322 U.S. 756, 64 S.Ct. 1267, 88 L.Ed. 1585, *rev'd on other grounds*, 145 F.2d 10 (4th Cir.1944), *cert. granted*, 323 U.S. 707, 65 S.Ct. 434, 89 L.Ed. 570 (1945), *aff'd*, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945), *reh'g denied*, 325 U.S. 897, 65 S.Ct. 1550, 89 L.Ed. 2007 (1945); *see also West Va. Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991) ("Where a statutory term presented to us for the first time is ambiguous, we construe it to contain that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law.").

## IV

In support of their respective positions, the Trustee and Debtor cite *In re Estate of Beall*, 384 Pa. 14, 119 A.2d 216 (1956), *overruled on other grounds by In re Super's*, 428 Pa. 476, 239 A.2d 380, 382 (1968) (acknowledging that although *Beall* was incorrect with respect to a taxation issue it was correct with respect to its determination of the rights of creditors).

In *Beall*, the issue before the Supreme Court of Pennsylvania was whether, under the National Service Life Insurance Act of 1940, an insured's estate was a "beneficiary" such that the proceeds of a life insurance policy were exempt from the claims of the insured's creditors when they passed to his estate at his death. *Beall*, 119 A.2d at 217. The exemption at issue was 38 U.S.C. § 454(a), a virtually identi-

cal predecessor of § 5301(a), which provided in material part:

> "Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

*Id.* at 217–18 (quoting 38 U.S.C. § 454(a)).

*Beall* is instructive because the court traced the exemption back to its origins in the War Risk Insurance Act of October 6, 1917. *See id.* at 218–20. It began by observing that "[t]he Veterans Acts from 1917 onward have evidenced a congressional intent to exempt, from the claims of creditors of the insured *and of the beneficiary*, the benefits of a military service insurance policy." *Id.* at 218 (emphasis added).

The War Risk Insurance Act of 1917 "prescribed that the proceeds of a policy should not be subject to the claims of creditors of the insured or of the beneficiary and restricted the permitted beneficiaries...." *Id.* It was amended soon thereafter in order to expand the class of allowed beneficiaries. *See id.* In 1924, various veterans' benefits and insurance acts were consolidated by the World War Veterans' Act, which provided in part that, "'the compensation, insurance, and maintenance and support allowance' payable under the various Veterans Acts should not be subject to the 'claims of creditors [of] any person to whom an award is made' under the provisions of such Acts...." *Id.*

The Act of August 12, 1935, repealed the exemption provided in the World War Veterans' Act and reenacted it in combination with a veterans' pension exemption.[3] *See*

---

**3.** The Act of August 12, 1935, also repealed and replaced the Act of March 3, 1873, an exemption for veterans' pensions, which provided:

*id.* at 219. Under § 454(a) of the Act of August 12, 1935, the exemption took a form virtually identical to the exemption at issue here.[4] *See id.* at 217–18.

In the amended exemption, Congress replaced the language concerning a "person" with language concerning a "beneficiary" of veterans' benefits. *See id.* In doing so, it replaced the language "claims of creditors of any person to whom an award is made," with "shall be exempt from the claim of creditors." *Id.; Smolin v. First Fidelity Sav. and Loan Assoc., Inc.,* 238 Md. 386, 209 A.2d 546, 549 (1965) (quoting the World War Veterans Act of June 7, 1924, and the Act of August 12, 1935). The purpose for omitting the language "of any person to whom an award is made" and substituting the "beneficiary" language was to make the exemption available to entities who were not considered persons. *See Beall,* 119 A.2d at 219; *Haley v. United States,* 46 F.Supp. 4, 7 (D.Mont.1942). A consequence of that change was to strip the language "claims of creditors" of its modifier, "of any person to whom an award is made," resulting in the ambiguity at issue here.

Nonetheless, the regulation that followed the amendment indicated that the change was not intended to limit the exemption to the claims of creditors of the insured alone, explaining that " '[t]he proceeds of a United States Government life insurance policy shall not be subject to the claims of creditors of the insured or creditors of any beneficiary to whom the proceeds may be awarded ***'." *See Beall,* 119 A.2d at 219 (quoting 38 C.F.R. § 10.3062 (1938 ed.)).[5]

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the Pension Office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."
*Smolin v. First Fidelity Sav. and Loan Assoc., Inc.,* 238 Md. 386, 209 A.2d 546, 549 (1965).

4. *See supra* at 430–431.

A few courts have read the amendment as including the insured as a beneficiary. *See, e.g., Haley,* 46 F.Supp. at 7; *Culp v. Webster,* 70 P.2d 273, 275 (Cal.Ct.App. 1937) (rejecting argument by creditor of the insured that the exemption applied only to beneficiaries other than the insured). Under that interpretation of the exemption, insureds and beneficiaries share the same status, eliminating the ambiguity in a way consistent with the history of the exemption and the regulation that followed the 1935 amendment.

## V

The Trustee cites two cases involving veterans' pensions. He cites *Andrew v. Colorado Sav. Bank,* 205 Iowa 872, 219 N.W. 62, 64 (1928), which was governed by the Act of March 3, 1873, and *Smolin,* which was governed by the Act of August 12, 1935.[6] Each case involved a veteran who deposited his pension benefits with a financial institution that later became insolvent. *See Smolin,* 209 A.2d at 546–47; *Andrew,* 219 N.W. at 63. Each veteran asserted that, by virtue of a veterans' benefit exemption, he was entitled to a priority claim against the receiver of the financial institution for his deposit. *See Smolin,* 209 A.2d at 548–49; *Andrew,* 219 N.W. at 63–64. In each case, the court determined that the receiver was not a creditor of the veteran and that the exemption was inapplicable. *See Smolin,* 209 A.2d at 550–51; *Andrew,* 219 N.W. at 64. Thus, *Andrew* and *Smolin,* which considered the issue of whether a particular entity was in fact a creditor, are not

5. The exemption was amended again in 1946 to remove restrictions on the class of permitted beneficiaries. *See Beall,* 119 A.2d at 220.

6. Although the version of the exemption in *Smolin* was virtually identical to the one at issue here, the *Andrew* decision predated the Act of August 12, 1935, and accordingly, it was decided under a statute that dealt exclusively with pensions. *See supra* n. 3, at 431–432.

helpful in the present matter, which involves the issue of whether a beneficiary's creditors are subject to the exemption. The parties in the present action do not dispute that the exemption under § 5301(a) has been invoked by the Debtor to protect against the claims of creditors.

## VI

Finally, the Trustee cites *McLemore v. Huffines (In re Huffines)*, 57 B.R. 740 (M.D.Tenn.1985), which involved the Tennessee insurance exemptions provided in TENN.CODE ANN. § 56–7–201 to 203, and § 26–2–111(1)(C) and (3). *Huffines* did not involve the federal exemption at issue and is not relevant. *See In re Estate of Pechman*, 532 P.2d 385, 386 (Colo.Ct.App. 1974) ("National Service Life Insurance is a contract made in pursuance of federal statute and must be construed with reference to such statute, the regulations promulgated thereunder, and the decisions applicable thereto, rather than by laws and decisions governing private insurance companies.") (citing *Kauffman v. Kauffman*, 93 Cal.App.2d 808, 210 P.2d 29, 31 (1949)).

## VII

The ambiguity in § 5301(a) should be resolved in the Debtor's favor in this instance. The earlier statutes explicitly extended the exemption to the creditors of any person to whom an award was made. There is no indication that Congress's intent changed in that regard in 1935 when the exemption was amended. The fact that the amendment created the ambiguity is related instead to the replacement of "person" with language pertaining to a "beneficiary" in order to expand the permitted class of beneficiaries. *See Beall*, 119 A.2d at 219; *Haley*, 46 F.Supp. at 7. This decision is in keeping with the rule that statutes regarding veterans' benefits must be construed liberally in favor of the beneficiary. *See Porter*, 82 S.Ct. at 1233.

## VIII

The Trustee cites *Smolin* for the analogy that it draws between the exemption and a spendthrift trust. *See Smolin*, 209 A.2d at 550. Apparently, by doing so, he argues that the exemption no longer applies after the beneficiary receives the insurance proceeds. A spendthrift trust and the exemption, the *Smolin* court explained, achieve the result of protecting a "beneficiary from his own improvidence by removing the income and principal from the reach of creditors." *Id.* The Trustee cites *Smolin* for the statement that "[w]hen the money is received by the spendthrift beneficiary or when it is invested by him, it is available for the claims of creditors if they are able to reach it by execution, or otherwise." *Id.* Just prior to that statement, however, the court pointed out the crucial difference between the protection of a spendthrift trust and the protection of the exemption: "The federal legislation broadens the protection by including an exemption from execution of creditors even after receipt by the beneficiary . . . ." *Id.*

█ That the exemption continues to apply after receipt by the beneficiary is well established. *See Lawrence v. Shaw*, 300 U.S. 245, 57 S.Ct. 443, 445, 81 L.Ed. 623 (1937). The Supreme Court has reinforced the plain language of the exemption:

> Congress has declared that the payments of benefits by the government shall be exempt not only before but "after receipt by the beneficiary." We cannot conceive that it was the intent of Congress that the veteran should lose the benefit of this immunity, which would attach to the moneys in his hands, by depositing the government warrants or checks in bank to be collected and credited in the usual manner.

*Id.; Culp*, 70 P.2d at 275 ("[T]he words 'either before or after receipt by the beneficiary' put an end to all arguments, such as have been made under other similar exemption statutes, on the question whether the exemption continues to cover money

paid to the veteran after he has received it. Plainly, it does, under this statute, so long at least as the money is retained by the veteran or held for him by some depositary.").

Thus, the exemption continues to apply in the present matter.

## IX

■ Neither party has addressed the issue of whether the insurance proceeds retained their exempt status when the Debtor used them to purchase a certificate of deposit. The Supreme Court of Kansas addressed the issue in the context of a social security exemption in *E.W. v. Hall,* 260 Kan. 99, 917 P.2d 854 (1996). In *Hall,* the plaintiff argued that the defendant's social security benefits lost their exempt status when the defendant used the benefits to purchase a certificate of deposit citing *Porter v. Aetna Cas. Co.,* 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962). *Hall,* 917 P.2d at 858. In *Porter,* the Supreme Court determined that veterans' benefits did not lose their exempt status when they were deposited in a federal savings and loan which required a thirty day demand period for withdrawals. *See Porter,* 82 S.Ct. at 1233. The Court based that decision on the fact that the funds were readily accessible for maintenance and support rather than being permanent investments. *See id.* In explaining its decision, the Court noted that the deposit account was not speculative, nor was it a time deposit with interest. *See id.* It explained further that

> Congress, we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

*Id.; see also Culp,* 70 P.2d at 275 (explaining that benefits in a deposit account that were not commingled with other funds retained their exempt status).

The Supreme Court of Kansas was not persuaded that "[t]he bare reference in *Porter* to time deposits at interest" mandated a decision that benefits used to purchase a certificate of deposit lost their exempt status. *See Hall,* 917 P.2d at 858. It pointed out that certificates of deposit are preferred over savings accounts by beneficiaries who can shoulder some access restrictions in exchange for a higher interest rate. *See id.* The court concluded that "[c]ertificates of deposit are certainly 'normal modes adopted by the community' for the safekeeping of funds" and that it could "find no legal basis for concluding that funds in certificates of deposit are permanent investments which have lost the quality of money." *Id.* at 858–59.

The decision by the Supreme Court of Kansas is persuasive on the facts before this court. The evidence is that the insurance proceeds were not commingled with other funds. They retained their exempt status after they were used to purchase the Debtor's certificate of deposit.

## X

In summary, the exemption claimed by the Debtor under 38 U.S.C.A. § 1970(g) is inapplicable to the insurance proceeds at issue. The exemption claimed under 38 U.S.C.A. § 5301(a), however, does serve to exempt the disputed insurance proceeds from the claims of the Debtor's creditors and the proceeds retained their exempt status after being used to purchase a certificate of deposit. The Trustee's Objection to Amended Exemption Claim will be denied.